# United States Bankruptcy Appellate Panel

## For the Eighth Circuit

_____

No. 18-6003

_____

In re: Dennis Michael Thiel, Jr.

*Debtor*

------------------------------

David G. Velde, Chapter 7 Trustee

*Plaintiff - Appellee*

v.

Dennis Michael Thiel, Jr.

*Defendant - Appellant*

_____

Appeal from United States Bankruptcy Court
for the District of Minnesota - Fergus Falls

_____

Submitted: June 19, 2018
Filed: July 26, 2018

_____

Before SCHERMER, NAIL, and DOW, Bankruptcy Judges.

_____

NAIL, Bankruptcy Judge.

Dennis Michael Thiel, Jr. ("Debtor") appeals the January 23, 2018 judgment of the bankruptcy court[1] revoking Debtor's discharge. We have jurisdiction over this appeal pursuant to 28 U.S.C. § 158(b). We affirm.

BACKGROUND

Debtor filed a petition for relief under chapter 7 of the bankruptcy code on February 13, 2015. David G. Velde ("Trustee") was appointed trustee.

On the schedule of personal property he filed with his petition, Debtor indicated he had no "[o]ther liquidated debts owed to debtor[,] *including tax refunds*" and no "[o]ther contingent and unliquidated claims of every nature, *including tax refunds*[.]" (Emphasis added.) Four days later, Debtor filed his 2014 federal and state income tax returns with the appropriate taxing authorities.

On April 10, 2015, Debtor signed an amended schedule of personal property, on which he listed a 2014 income tax refund of $7,236.00,[2] and an amended schedule of property claimed as exempt. Debtor did not immediately file either amended schedule.

One week later, Debtor attended the meeting of creditors, at which Trustee asked him, *inter alia*, whether he was aware of any mistakes or errors in his schedules. Debtor said he would file an amended schedule of personal property to correct the amount of a social security disability claim that he had previously

---

[1]The Honorable Michael E. Ridgway, United States Bankruptcy Judge for the District of Minnesota.

[2]The "income tax refund" was actually two income tax refunds (one federal and the other state) that actually totaled $8,040.00. Hereafter, we will refer to "income tax refunds."

disclosed and to disclose a wage claim. Debtor also said he would file an amended schedule of property claimed as exempt to claim a portion of the wage claim exempt. Debtor did not mention the income tax refunds. Four days later, Debtor filed the amended schedule of personal property that included the income tax refunds and the amended schedule of property claimed as exempt.

Debtor received his discharge in due course. Following an unsuccessful attempt to have the bankruptcy court order Debtor to turn over the income tax refunds,[3] Trustee commenced an adversary proceeding under 11 U.S.C. § 727(d)(2) to revoke Debtor's discharge.

The matter was tried. In its memorandum decision, the bankruptcy court found Debtor knowingly and fraudulently failed to surrender the income tax refunds to Trustee and directed the entry of a judgment revoking Debtor's discharge. Judgment was entered, and Debtor timely appealed.

STANDARD OF REVIEW

We review the bankruptcy court's finding that Debtor knowingly and fraudulently failed to surrender the income tax refunds to Trustee for clear error. *See Islamov v. Ungar* (*In re Ungar*), 633 F.3d 675, 679 (8th Cir. 2011).

---

[3]At some point prior to Trustee's motion for turnover, Debtor received and spent the income tax refunds. Relying on *Brown v. Pyatt* (*In re Pyatt*), 486 F.3d 423 (8th Cir. 2007), the bankruptcy court concluded it could not order Debtor to turn over the income tax refunds, because having been spent, the funds were no longer in Debtor's possession, custody, or control.

DISCUSSION

A bankruptcy court *must* revoke a debtor's discharge if "the debtor acquired property that is property of the estate . . . and knowingly and fraudulently failed . . . to deliver or surrender such property to the trustee[.]"   11 U.S.C. § 727(d)(2). Because a debtor is unlikely to admit acting knowingly and fraudulently, the requisite intent

> may be established by showing that the debtor knowingly made an omission that misleads the trustee or that the debtor engaged in a fraudulent course of conduct.   A debtor's intent may be inferred from all the surrounding circumstances where the debtor's pattern of conduct supports a finding of fraudulent intent.  The focus is on whether the debtor's actions appear so inconsistent with his self-serving statement of intent that the proof leads the court to disbelieve the debtor.  Fraudulent intent may also be established by showing that the debtor acted so recklessly that fraud can be implied.

*Fokkena v. Klages* (*In re Klages*), 381 B.R. 550, 554 (B.A.P. 8th Cir. 2008) (citations omitted).

Debtor does not deny he acquired the income tax refunds.  He does not deny the income tax refunds were property of the estate.  And he does not deny he failed to deliver or surrender the income tax refunds to Trustee.  Consequently, the only issue presented on appeal is whether the bankruptcy court clearly erred in finding Debtor failed to do so knowingly and fraudulently.

In support of its finding that Debtor knowingly failed to deliver or surrender the income tax refunds to Trustee, the bankruptcy court identified the following predicate facts:

-4-

- The instructions for Debtor's schedule of personal property directed Debtor to list "all personal property . . . of whatever kind."

- Debtor nevertheless indicated no income tax refunds were owed to him when he filed his schedule of personal property on February 13, 2015.

- Debtor filed his 2014 income tax returns on February 17, 2015.

- Debtor signed his amended schedule of personal property on April 10, 2015.

- In his amended schedule of personal property, Debtor added the income tax refunds.

- Debtor attended the meeting of creditors on April 17, 2015.

- At the meeting of creditors, Trustee asked Debtor whether he had thought of any mistakes or errors in his schedules.

- Debtor said he would file an amended schedule of personal property to disclose a wage claim and to more accurately reflect the amount of his social security disability claim.

- The wage claim and the social security disability claim appeared on the same page of the amended schedule of personal property as the income tax refunds.

- The only mention at the meeting of creditors of anything related to Debtor's tax returns was when Debtor confirmed he would give another copy of his tax returns to Trustee.

In further support of its finding that Debtor knowingly failed to deliver or surrender the income tax refunds to Trustee, and in support of its finding that Debtor fraudulently failed to deliver or surrender the income tax refunds to Trustee, the bankruptcy court identified the following predicate facts:

- Debtor's answers to the question of *how he received* the income tax refunds were inconsistent. In his answer to Trustee's complaint, he suggested he received a "rapid refund." In his response to Trustee's request for admissions, he admitted they were electronically deposited to his bank account. In his trial memorandum, he stated he immediately cashed them and spent the proceeds. And at trial, he emphatically stated he did not use rapid refund and said he believed he received them by mail at different times.

- Debtor's answers to the question of *when he received* the income tax refunds were also inconsistent. In his response to Trustee's request for admissions, he admitted he spent them before the meeting of creditors. At trial, he said he received them three to four weeks after the date he filed his income tax returns, he said he received one in March and the other in April, and he said he received them after the meeting of creditors.

- Debtor's answers to the question of *how he spent* the income tax refunds were likewise inconsistent. In an affidavit that was received as an exhibit at trial, he stated he spent them on a number of things, including payments of $599.00 to five different pre-petition creditors who were not listed on Debtor's schedules of creditors.[4] In the same affidavit, he stated he used them to pay his attorney $1,835.00, which contradicted his response to Trustee's request for admissions, in which he admitted he did not use them to pay his attorney this amount. And at trial, he testified he paid his attorney more than $2,000.00, which contradicted his statement of financial affairs and his attorney's disclosure of compensation, both of which indicated Debtor paid $1,500.00 for his attorney's legal services.

---

[4]While these transfers were made post-petition–thus placing them beyond the scope of 11 U.S.C. § 547–the $599.00 figure calls to mind the safe harbor of § 547(c)(8), which provides in consumer cases a trustee may not avoid an otherwise avoidable preferential transfer if the aggregate value of the property that constitutes or is affected by the transfer is less than $600.00.

Debtor does not challenge any of these predicate facts.  Instead, he argues they do not support the bankruptcy court's finding that he acted knowingly and fraudulently in failing to deliver or surrender the income tax refunds to Trustee.  We disagree.

Debtor admits he made mistakes, but he attributes those mistakes to a number of things about which he testified:  He is a high school dropout; he has issues with depression; he is a recovering alcoholic; he suffers from memory loss; he has no experience with bookkeeping or record keeping; and he was being harassed by creditors.  He says he never tried to hide anything from anybody.

We are thus presented with two completely different and diametrically opposed views of the evidence:  The bankruptcy court viewed the evidence as demonstrating Debtor acted knowingly and fraudulently; Debtor views the evidence as demonstrating he acted innocently.  The bankruptcy court's view is certainly permissible in light of the numerous contradictions and inconsistencies in Debtor's testimony.  For that reason alone, even assuming Debtor's view is also permissible,[5] we cannot say the bankruptcy court's finding was clearly erroneous. *Anderson v. City of Bessemer City, North Carolina*, 470 U.S. 564, 574 (1985) ("Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous.").

---

[5]The bankruptcy court stated unequivocally Debtor lacked credibility. Inasmuch as we must give due regard to the bankruptcy court's opportunity to judge witnesses' credibility, Fed.R.Civ.P. 52(a)(6) (incorporated by reference in Fed.R.Bankr.P. 7052), this calls into question whether Debtor's view is in fact permissible. It would be difficult–if not impossible–to accept Debtor's view without giving credence to his various and sundry explanations for the contradictions and inconsistencies in his testimony.

Debtor's remaining arguments do not persuade us otherwise. Debtor says Trustee did not tell him, either orally or in writing, the income tax refunds were property of the estate and he should not spend it. Had Trustee done so, the bankruptcy court's decision would undeniably have been easier. *See Klages*, 381 B.R. at 552, 554. However, Debtor points us to no authority to suggest this is dispositive or to suggest it was incumbent upon Trustee to provide such guidance, especially when, at the time of the meeting of creditors, Trustee could not have known Debtor would be receiving–or in one version of Debtor's story, had already received and spent–the income tax refunds.

Debtor suggests given the passage of time between the acts about which Trustee complained and the trial, it was not unreasonable for Debtor to be unable to clearly recall certain details. This goes to Debtor's credibility, which the bankruptcy court assessed and, as previously noted, found lacking.

Debtor argues Trustee was not misled by his actions. Because Debtor did not raise this issue before the bankruptcy court, we will not consider it on appeal. *Edwards v. Edmondson* (*In re Edwards*), 446 B.R. 276, 280 (B.A.P. 8th Cir. 2011) (discussion and citations therein), *aff'd*, 477 F. App'x 405 (8th Cir. 2012). In any event, misleading the trustee is not an element of a claim under § 727(d)(2). Showing the debtor misled the trustee is merely one way–not the only way–of establishing the requisite intent under that provision. *Klages*, 381 B.R. at 554.

Finally, Debtor claims the question of who is entitled to the income tax refunds is complicated and difficult to understand. To the extent this is true and is intended to suggest Debtor did not understand the income tax refunds were property of the estate, this also goes to Debtor's credibility.

## CONCLUSION

The bankruptcy court's finding that Debtor knowingly and fraudulently failed to surrender his 2014 income tax refunds to Trustee was not clearly erroneous. Consequently, we affirm the bankruptcy court's judgment revoking Debtor's discharge.

———————————————